UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CRIMINAL NO. 06-284 (JDB) |
| | : | |
| v. | : | |
| | : | |
| GEORGE W. SMITHERMAN, JR., | : | |
| | : | |
| Defendant. | : | |

**GOVERNMENT'S OPPOSITION TO DEFENDANT'S
MOTION TO SUPPRESS STATEMENTS**

The United States of America by and through its attorney, the United States Attorney for the District of Columbia, hereby responds in opposition to the motion of defendant George W. Smitherman, Jr., to suppress statements. Specifically, in his motion defendant seeks to suppress all statements made by him on July 27, 2004, because allegedly he was not advised "fully" of his rights under Miranda v. Arizona, 384 U.S. 436 (1966), at the time they were taken.[1] As will be discussed below, defendant's motion should be denied because Miranda is applicable only where an individual is in "custody" at the time a statement is taken from him or her, and defendant was not in custody at the time of the statements in question. Because he was not in custody at that time, no Miranda warnings were required to render the statements admissible at the trial of this matter.

**I. Factual Summary**

1. In July of 2004, the Federal Bureau of Investigation (FBI), in coordination with the United States Attorney's Office for the District of Columbia, was investigating alleged misuse of District of Columbia (D.C.) government purchase cards to buy goods and supplies by individuals in the D.C.

---

[1] As will be discussed below, defendant was told at the time of these statements that he did not have to provide a statement, that he had the right to a lawyer, that he did not have to say anything that would incriminate himself, and that he could leave whenever he wanted to do so. In other words, he received most if not all of his Miranda rights. Nevertheless, since defendant was not in custody, the government was not required to read him all of his Miranda rights.

Public School (DCPS) system. At that time, the only targets of the investigation were Charles Wiggins, a private contractor, and Lorelle Dance, a business manager for several DCPS schools.[2]

2. In July of 2004, defendant, a former principal at Moten Elementary School, was subpoenaed to appear before a federal grand jury in D.C. investigating the alleged purchase card abuses.

3. Upon defendant's arrival at the courthouse, he met with Assistant U.S. Attorney (AUSA) Julieanne Himelstein and FBI Special Agent Julie Lenkhart, both of whom were dressed in normal business attire and not carrying or possessing weapons. AUSA Himelstein introduced herself to defendant and explained the grand jury process to him. She asked defendant repeatedly whether he would like to have an attorney present to represent him. AUSA Himelstein advised defendant that he was not required to testify before the grand jury and could leave at any time. AUSA Himelstein and Special Agent Lenkhart told defendant that since his prior interview with the FBI on June 16, 2004, and since he was served with the grand jury subpoena, the FBI obtained bank records for his personal checking account. Defendant declined the assistance of an attorney and said he just wanted to get his testimony over with because he was feeling a lot of stress and anxiety over the pending investigation.

4. AUSA Himelstein and Special Agent Lenkhart then asked defendant about certain checks that appeared to have been given to him by Wiggins. All of the conversations prior to entering the

---

[2] Wiggins and Dance pled guilty to bribery charges on, respectively, January 4, 2006, and April 3, 2006.

grand jury room were conducted in the public hallway outside of the grand jury room in the old part of the courthouse and carried on in conversational tones.[3]

5. Thereafter, AUSA Himelstein again advised defendant that he could have an attorney represent him and that she would help him obtain representation if he wanted her assistance in doing so. AUSA Himelstein also told defendant that was free to leave and/or obtain an attorney. Defendant again said he just wanted to get done with his testimony.[4]

6. Defendant then appeared as a witness in the grand jury. At that time, AUSA Himelstein, after having defendant introduce himself to the grand jurors, said the following: "Sir, before I ask you questions, I want to explain to you what your rights are before the Grand Jury, and, as you know, you and I had this discussion outside of the Grand Jury before we came in here. Is that correct?" Defendant answered "That's correct." AUSA Himelstein then went through the rights that defendant had, including the right to a lawyer and not to incriminate himself.

7. After some limited questions about background matters in the investigation, AUSA Himelstein took a short break. When she returned to the grand jury, AUSA Himelstein, with defendant present, stated that during the break she and defendant had again discussed his right to seek the advice of a lawyer. After some additional questions along this same line of inquiry, defendant asked: "Can I invoke my Fifth Amendment right at any time?" AUSA Himelstein told

---

[3] This was a semi-public area where individuals having business with the grand jury were free to come and go. In the new annex, the area outside the grand jury rooms is more restricted.

[4] This meeting was memorialized by Special Agent Lenkhart in an FD-302 which is being filed under seal as an exhibit to this response.

3

him he could.  Defendant said he would do so and was excused from his grand jury appearance at that time.[5]

8.  On September 26, 2006, defendant was indicted by the grand jury for receiving payments from Wiggins, being charged with three counts of illegal gratuities and three counts of supplementation of salary.

## II. Discussion

Defendant argues that, because he was subpoenaed to the grand jury, he was in custody at the time of the interview of him just prior to his going into the grand jury because he was not free to leave.  Defendant's Motion, at page 3.  Because defendant was not, he claims, fully advised of his Miranda rights, his statement was taken in violation of his Fifth Amendment rights and must be suppressed.  *Id.*  As to defendant's statement in the grand jury, defendant acknowledges that the government is not obligated to give full Miranda rights prior to his testimony, but claims that his testimony there was just a continuation of his allegedly tainted pre-grand jury interview and, therefore, also must be suppressed.  *Id.*, at pages 3-4.

Defendant's argument is based on the flawed premise that he was in "custody" at the time of his pre-grand jury interview.  The relevant legal standards applicable here were thoroughly set forth in the Court's recent opinion in United States v. Suchit, ___ F.Supp.2d ___, 2007WL 809788, *11-*12 (D.D.C. March 15, 2007), where the Court stated as follows:

> An officer's obligation to administer the warnings described in Miranda v. Arizona, 384 U.S. 436 (1966), is triggered "'only where there has been such a restriction on a person's freedom as to render him 'in custody.'" Stansbury v. California, 511 U.S. 318, 322 (1994) (per curiam) (quoting Oregon v. Mathiason, 429 U.S. 492, 495 (1977)).  The Supreme Court has addressed the definition of "custody" in several cases, but has emphasized that "the ultimate inquiry is simply whether

---

[5] This grand jury transcript is being filed under seal as an exhibit to this response.

there [was] a '*formal arrest or restraint on freedom of movement' of the degree associated with a formal arrest*." Stansbury, 511 U.S. at 322 (quoting California v. Beheler, 463 U.S. 1121, 1125 (1983) (per curiam)) (emphasis added); *see also* United States v. Calloway, 298 F.Supp.2d 39, 47-48 (D.D.C.2003) (discussing Beheler and subsequent cases, and concluding that "the circumstances surrounding the interrogation must constitute the functional *equivalent* of a formal arrest") (emphasis in original). The relevant inquiry is an objective one focusing on "how a reasonable man in the suspect's position would have understood his situation." Berkemer v. McCarty, 468 U.S. 420, 442 (1984). Hence, the "determination of custody depends on the objective circumstances of the interrogation, not on the subjective views harbored by the interrogating officer or the person being questioned." Stansbury, 511 U.S. at 323. The defendant bears the burden of proving custody by a preponderance of the evidence. *See* United States v. Goldberger, 837 F.Supp. 447, 452 n. 4 (D.D.C.1993).

In this case, defendant has not, and cannot, met his burden of proving that he was in custody at the time of his pre-grand jury interview. As discussed above, he was not physically restrained in any way, was told that he was not required to testify before the grand jury, and that he could leave at any time. Defendant said he understood all this, but just wanted to get done with his testimony. Furthermore, the individuals doing the questioning were in normal business attire, not law-enforcement type uniforms, and did not have weapons or restraints.

The only argument defendant has made in support of his motion is the fact he was subpoenaed to the grand jury. *See* Defendant's Motion, at page 3 (defendant "was in custody – he had been compelled to appear by the grand jury and was not free to leave."). Defendant's assertion is incorrect on both factual and legal grounds. Factually, defendant was told he was free to leave and that he did not have to give any statement. Legally, defendant was not in custody simply because he had been subpoenaed to the grand jury.[6] *See* United States v. Micielli, 594 F.2d 102, 105-06 (5th Cir. 1979) (pre-grand jury interview of defendant in a room by ATF agents and AUSA not custodial;

---

[6] There is a significant difference between being compelled to appear, as was defendant, and being compelled to speak, which defendant was not. It is the latter concern that is the primary focus of the Fifth Amendment and Miranda,

5

"[o]ne of the agents testified that the door was not locked, that the setting was congenial and [defendant] was free to leave the room"). *See generally* United States v. Bazemore, 2003 WL 22273069 (3rd Cir. 2003) (defendant not in custody during pre-grand jury interview; although this case is denoted non-precedential, the factual and legal analysis may be of assistance to the Court); United States v. McConnell, 903 F.2d 566, 571-72 (8th Cir. 1990), *cert. denied sub nom.* Byrne v. United States, 498 U.S. 1106 (1991) (statements elicited from defendant before testimony in grand jury not subject to Miranda; defendant not in custody and freedom of movement was never limited). *Cf.* United States v. Hsin-Yung, 97 F.Supp.2d 24, 31-32 (D.D.C. 2000) (J. Harris) (cuffed and shackled defendant, who was isolated from remainder of crew and passengers on ship, was in custody when he made statements to Coast Guardsman).

Defendant's argument here is similar to that rejected by this Court in Suchit, *supra*, at *12, where the Court found as follows:

> The only arguably restrictive circumstance was the location of the interview at the Arouca police station, as the record is undisputed that [defendant] was not handcuffed and that his liberty was not restrained. The Supreme Court has repeatedly rejected the proposition that questioning of a suspect at a station house, standing alone, constitutes custody. *See* Beheler, 463 U.S. at 1125 ("we have explicitly recognized that Miranda warnings are not required 'simply because the questioning takes place in the station house, or because the questioned person is one whom the police suspect'") (quoting Mathiason, 429 U.S. at 295). Because [defendant] was not in custody at the time of either FBI interview, no Miranda warnings were required to render the statements admissible at the trial of this matter.

*See* United States v. Leese, 176 F.3d 740, 742-43 (3rd Cir. 1999) (defendant, a suspected Postal employee embezzler, interviewed in closed door interview inside Postmaster's private office; defendant not in custody so as to require Miranda warnings when not openly arrested or led to believe he could not leave).

6

Similarly, in this case, defendant was not in custody when he was interviewed in the open hallway outside the grand jury room before entering the grand jury.  Accordingly, the government was not required to advise him "fully" of his <u>Miranda</u> rights.  Nevertheless, the government agents did advise defendant, both outside the grand jury and inside the grand jury room, of his right to a lawyer in the grand jury proceedings, his right not to incriminate himself and his right to leave whenever he wanted.  Because there was no violation of defendant's rights, his statements prior to and in the grand jury can be used at the trial in this matter.

### III.  Conclusion

For the foregoing reasons, as well as any raised at a hearing in this matter, the United States respectfully submits that defendant's motion to suppress defendant's statements should be denied.

Respectfully submitted,

JEFFREY A. TAYLOR
UNITED STATES ATTORNEY
D.C. Bar No. 498610


/ s /
_____
JULIEANNE HIMELSTEIN
Bar No. 417136
DANIEL P. BUTLER
Bar No. 417718
ASSISTANT UNITED STATES ATTORNEYS
Bar No. 417136
555 4th Street, N.W., 5TH Floor
Washington, DC 20530
(202) 514-8203, (202) 353-9431
Julieanne.Himelstein@USDOJ.Gov
Daniel.Butler@USDOJ.Gov