**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | |
| | : | |
| v. | : | Criminal No. 06-284 (JDB) |
| | : | |
| GEORGE W. SMITHERMAN, JR. | : | |

**DEFENDANT'S MOTION FOR JUDGMENT OF ACQUITTAL**
**AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF**

Pursuant to Federal Rule of Criminal Procedure 29(a), George W. Smitherman, Jr., the defendant, respectfully moves this Honorable Court to enter a judgment of acquittal as to each count of the indictment.[1]  In support of this motion, Mr. Smitherman submits the following.

**Factual Background**

Mr. Smitherman is charged in a six count indictment with three counts of receipt of gratuities by a public official and three counts of receipt of supplementation of salary.

**Argument**

Federal Rule of Criminal Procedure 29(a) provides:  "After the government closes its evidence or after the close of all the

---

[1]This memorandum addresses some, but not all, of the grounds for his motion for judgment acquittal made in open court.  This memorandum is not intended to limit the grounds for the motion, and Mr. Smitherman does not waive any argument not set forth herein, and this memorandum also incorporates all the grounds set forth orally in court.

evidence, the court on the defendant's motion must enter a judgment of acquittal of any offense for which the evidence is insufficient to sustain a conviction." When considering whether to grant a motion for judgment of acquittal, the Court "must determine whether upon the evidence, giving full play to the right of the jury to determine credibility, weigh the evidence, and draw justifiable inferences of fact, a reasonable mind might fairly conclude guilt beyond a reasonable doubt." <u>Bailey v. United States</u>, 416 F.2d 1110, 1112 (D.C. Cir. 1969) (quotations omitted). The Court must "assume the truth" of the government's evidence and give the government "the benefit of all legitimate inferences" from the evidence. <u>Id</u>. at 1113 (quotations omitted). If, however, the government's evidence cannot support a finding of guilt beyond a reasonable doubt, "the judge must not let the jury act; he must not let it act on what would necessarily be only surmise and conjecture, without evidence." <u>Id</u>. at 1113 (quotation omitted). If the Court concludes that no reasonable juror could find guilt beyond a reasonable doubt, a judgment of acquittal must be entered.

I.   **NO REASONABLE JUROR COULD FIND BEYOND A REASONABLE DOUBT THAT MR. SMITHERMAN RECEIVED GRATUITIES IN VIOLATION OF 18 U.S.C. § 201(c)(1)(B).**

Section 201(c)(1)(B) provides:

(c) Whoever –
              (1) otherwise than as provided by law for
         the proper discharge of official duty –
                        * * *

2

>    (B) being a public official, former
>    public official, or person selected to be a
>    public official, otherwise than as provided
>    by law for the proper discharge of official
>    duty, directly or indirectly demands, seeks,
>    receives, accepts, or agrees to receive or
>    accept anything of value personally for or
>    because of any official act performed or to
>    be performed by such official or person;
>                    * * *

shall be fined under this title or imprisoned for not

more than two years, or both.

Both the Supreme Court and the D.C. Circuit have

recently addressed the gratuity statute.  In United States v.

Sun-Diamond Growers of America, 526 U.S. 398 (1999) the Court

held that it is not enough "that a gratuity was given because

of the recipient's official position," but that there must be

proof of "a link between a thing of value conferred upon a

public official and a specific 'official act' for or because

of which it was given."  Id. at 400-03.

In Valdes v. United States, 475 F.3d 1319 (D.C. Cir.

2007)(en banc), the court took as instructive the Supreme

Court's statement in Sun-Diamond, 526 U.S. at 412, that:

>    [T]he numerous ... regulations and statues
>    littering this field [ ] demonstrate that this
>    is an area where precisely targeted
>    prohibitions are commonplace, and where more
>    general prohibitions have been qualified by
>    numerous exceptions.  Given that reality, a
>    statute in this field that can linguistically
>    be interpreted to be either a meat axe or a
>    scalpel should reasonably be taken to be the
>    latter.

475 F.3d at 1324.  In Valdes, the court had to determine

3

whether a police officer's actions constituted an "official act" under § 201(a)(3):

> The term "official act" means any decision or action on any question matter, cause, suit, proceeding or controversy, which may at any time be pending, or which may by law be brought before any public official, in such official's official capacity, or in such official's place of trust or profit.

These "predicate acts are defined narrowly."  475 F.3d at 1327.

In the present case, the government has failed to satisfy the requirements of <u>Sun-Diamond</u> and <u>Valdes</u>.  The government has not established any link between the payments to Mr. Smitherman and a specific official act for which they were given.  Nor has the government proven an "official act" sufficient to incur liability under § 201 for Mr. Smitherman.

## II.   NO REASONABLE JUROR COULD FIND BEYOND A REASONABLE DOUBT THAT MR. SMITHERMAN RECEIVED SUPPLEMENTATION OF SALARY IN VIOLATION OF 18 U.S.C. § 209.

Counts Four, Five and Six on the indictment are based on the government's assertion that Mr. Smitherman's acceptance of each of the three checks from Mr. Wiggins constituted an unlawful supplementation of his DCPS salary, under 18 U.S.C. § 209.

Section 209 provides:

> (a) Whoever receives any salary, or any contribution to or supplementation of salary, as compensation for his services as an officer or employee of . . . the District of

4

> Columbia, from any source other than the
> Government of the United States, except as
> may be contributed out of the treasury of any
> State, county, or municipality . . . Shall be
> subject to the penalties set forth in section
> 216 of [title 18].

Section 216 provides:

> (a) The punishment for an offense under
> section . . . 209 . . . of this title is the
> following:

>> (1) Whoever engages in the conduct
>> constituting the offense shall be
>> imprisoned for not more than one year or
>> fined in the amount set forth in this
>> title, or both.
>> (2) Whoever willfully engages in
>> the conduct constituting the offense
>> shall be imprisoned for not more than
>> five years or fined in the amount set
>> forth in this title, or both.

Mr. Smitherman is charged under § 216(a)(2), requiring that

he acted "willfully."  Section 209 is a "prophylactic rule

that aims at the source of Government employees'

compensation."  <u>Crandon v. United States</u>, 494 U.S. 152, 159

(1990).

### A.    No violation of § 209 occurred because Mr. Smitherman was not an employee at the time of the payment.

A violation of § 209 can occur only if the recipient of

the payment is a government employee at the time the payment

is made.  <u>Crandon</u>, 494 U.S. at 159 ("employment status is an

element of the offense").  "[A] violation of § 209(a) either

is, or is not, committed at the time the payment is made."

<u>Id</u>.

Here, Mr. Smitherman was not an employee of DCPS at the time the payments were made.  Thus, no violation occurred.

**B.    No violation of § 209 occurred because Mr. Smitherman did not receive payments periodically during the term of employment or payments calculated with reference to periodic compensation.**

Section 209 prohibits not merely the payment of compensation to a government employee, but the payment of, contribution to, or supplementation of *salary*.  <u>Crandon</u>, 494 U.S. at 171 (Scalia, J. concurring).  Unless the payments to the employee are in the nature of a salary and bear the objective indicia of a salary, no violation of § 209 has occurred.  <u>See</u> <u>United States v. Alfisi</u>, 308 F.3d 144, 153 (2d Cir. 2002).

In <u>Crandon</u>, which involved a civil enforcement action, the Supreme Court held that § 209 did not apply to payments made to individuals who were not employees at the time the payments were made and that employment status at the time the payment is made is an element of the offense.  <u>Crandon</u>, 494 U.S. at 159-60.  Because the language of § 209 was "set forth in a criminal statute," it was "appropriate to apply the rule of lenity in resolving any ambiguity in the ambit of the statute's coverage," in <u>Crandon</u>.  <u>Id</u>. at 158.  In doing so, the Court looked not just at the "statutory language," but

6

also at the "design of the statute as a whole and to its
object and policy." Id.  Any ambiguity in the statute was
thus "resolved in the petitioners' favor." Id. at 168.  The
Court recently reaffirmed that the "rule of lenity requires
ambiguous criminal laws to be interpreted in favor of the
defendants subjected to them." United States v. Santos, 128
S.Ct. 2020, 2025 (2008).  The Court explained:

> This venerable rule not only vindicates
> the fundamental principle that no citizen
> should be held accountable for a violation of
> a statute whose commands are uncertain or
> subjected to punishment that is not clearly
> prescribed.  It also places the weight of
> inertia upon the party that can best induce
> Congress to speak more clearly and keeps
> courts from making criminal law in Congress's
> stead.

Id.  The Court in Santos rejected the government's argument
"to resolve the statutory ambiguity in light of Congress's
presumptive intent to facilitate money-laundering
prosecutions," by stating:

> That position turns the rule of lenity upside-
> down.  We interpret ambiguous criminal
> statutes in favor of defendants, not
> prosecutors.

Id. at 2028.

The Court in Crandon reviewed the reasons behind the
enactment of § 209.  The predecessor to § 209 was enacted to
end the practice of "private organizations" paying the "real
salaries of employees" of the Bureau of Education, who were

paid one dollar per year by the government.  Id. at 160 n.12.
The rule was characterized as "prohibiting two payrolls and
two paymasters for the same employee on the same job."  Id.
at 166.  The Court believed it "appropriate . . . to
"identify the specific policies that the provision serves as
well as those that counsel against reading it too broadly."
Id. at 165 (emphasis added).  The Court referred to the
"ongoing salary supplements" covered by § 209.  Id. at 166.

Justice Scalia, joined by Justices O'Connor and Kennedy,
concurred, finding that while payments made before or after
employment were not necessarily excluded, "payments which are
neither made periodically during the term of federal service,
nor calculated with reference to periodic compensation are
excluded." Crandon, 494 U.S. at 168-69 (Scalia, J.
concurring).  As Justice Scalia noted, "[s]alary is not the
same as compensation, but is one species of that genus.  It
is '[t]he recompense or consideration paid, or stipulated to
be paid, to a person at regular intervals for services . . .;
fixed compensation regularly paid, as by the year, quarter,
month, or week.'" Crandon, 494 U.S. at 171-72 (Scalia, J.
concurring) (quoting Webster's Second New International
Dictionary 2203 (1957) (emphasis added)).  Because the object
of the prohibition in this statute is payments related to
salary, lump sum payments unrelated to salary are not

prohibited under § 209.  Id. at 172-74 (Scalia, J.
concurring).  "To read it differently – to regard any single
payment from a nongovernment source as a 'contribution to or
supplementation of salary' – is to render all the references
to salary superfluous, so that the statute might as well have
prohibited (like [18 U.S.C.] § 203) all 'compensation.'" Id
at 172 (Scalia, J. concurring).

While lump sum payments such as those the government
alleges were made here may be unlawful under another
provision, such payments do not violate § 209.  Such lump sum
payments could constitute violations of 18 U.S.C. § 201 – as
the government has charged but failed to prove here – if the
payments constitute bribes.  Other statutes, not charged (or
violated) here, also criminalize particular lump sum
payments.  For example, 18 U.S.C. § 203 prohibits the payment
of compensation for services in a particular matter, and D.C.
Code § 22-704 prohibits gratuities which cause an "official
to execute any of the powers in such official vested . . .
otherwise than is required by law."

As Justice Scalia, noted, "[u]ntil a criminal statute
reasonable enough to be accorded a clear interpretation can
be enacted, lump-sum payments that do not consist of
bribes(which are already covered by 18 U.S.C. § 201) or of
compensation for services *in a particular matter* (which are

already covered by 18 U.S.C. § 203) are better handled by administrative prohibition, through Executive Order under the President's authority and pursuant to 5 U.S.C. § 7301, see Exec. Order No. 11222, 3 CFR 306 (1964-1965 Comp.) and by agency regulations adopted under delegation of that authority." Crandon, 494 U.S. at 183 (Scalia, J. concurring).

Prior to the Court's decision in Crandon, few published court opinions addressed § 209. Crandon, 494 U.S. at 176-77. Only one published opinion -- from a district court -- discussed the salary requirement of § 209 and, although that court agreed that a lump-sum payment could support a violation, the discussion was "gratuitous" because the statute was not at issue. Id. (citing United States v. Gerdel, 103 F.Supp. 635, 638 (E.D. Mo. 1952). The only pre-Crandon D.C. Circuit case to address § 209 involved a lump-sum payment, but did not address the salary issue and found no violation because the payment was not made for services to the government. United States v. Muntain, 610 F.2d 964, 969-70 (D.C. Cir. 1979). In only two cases reported before Crandon "was the (unchallenged) assumption that lump-sum payments were covered apparently necessary to the court's holding." Id. (citing United States v. Oberhardt, 887 F.2d 790, 793-94 (7th Cir. 1989); United States v. Pezzello, 474

F.Supp. 462, 463 (N.D. Tex. 1979)).  Thus, prior to <u>Crandon</u>, no court considered and decided a contested issue regarding what constitutes "salary" or "supplementation of salary."

Since <u>Crandon</u>, the D.C. Circuit and this court have issued a series of opinions involving a civil action under § 209.  <u>See</u> <u>United States v. Project on Government Oversight</u>, 454 F.3d 306 (D.C. Cir. 2006) (finding that factual dispute existed as to whether payment was made for services rendered to the government)("<u>POGO I</u>"); <u>United States v. Project on Government Oversight</u>, 525 F.Supp.2d 161 (D. D.C. 2007) ("<u>POGO II</u>"); <u>United States v Project on Government Oversight</u>, 526 F.Supp.2d 62 (D. D.C. 2007)("<u>POGO III</u>"); <u>United States v. Project on Government Oversight</u>, 531 F.Supp.2d 59 (D. D.C. 2008)("<u>POGO IV</u>"); <u>United States v. Project on Government Oversight</u>, 543 F.Supp.2d 55 (D. D.C. 2008)("<u>POGO V</u>").

The <u>POGO</u> cases involved a lump-sum payment by a public interest group to an employee of the Department of the Interior.  The court of appeals opinion, <u>POGO I</u>, does not address the issue whether a one-time payment constitutes a "salary, or any contribution to or supplementation of salary."  Rather it addressed whether the "for his services as an officer or employee" prong of the statute.  454 F.3d at 309.  In reversing this court's grant of summary judgement, the court of appeals noted that the "only question before us

is whether . . . POGO paid Berman as compensation for his services as a government employee." Id. at 313.

On remand, in POGO II, this court did address the issue of whether § 209 applies to lump-sum payments. This court found that it did. For the reasons discussed below, however, Mr. Smitherman contends that the court was incorrect and should re-examine its holding. "Courts should correct their mistakes where important matters are concerned." Cone v. Bell, 492 F.3d 743, 765 (6th Cir. 2007).

As an initial matter, the rule of lenity is not mentioned in this court's opinion in POGO II. This is a serious shortcoming, as it formed the basis for the analysis in both the majority's opinion in Crandon, and for Justice Scalia's concurrence. To not even mention it reflects the infirmity in the court's interpretation of the statute. Indeed, three justices of the Supreme Court having construed the statute as not covering non-salary payments, without any of the justices in the majority expressing disagreement, is essentially a per se indicator that the statute is, at the least, ambiguous, and, therefore, must be construed in Mr. Smitherman's favor. This is especially so as this is a criminal case, unlike the civil enforcement proceeding in POGO.

This court in POGO II also accepted the government's

12

argument about the statutory purpose.  525 F.Supp. 2d at 172-73.  However, there is no mention in the opinion of the fundamental basis for the statute, as reviewed in <u>Crandon</u>, which was to prohibit private organizations from paying salaries to government employees.  References to the "prophylactic" purpose of the statute do not answer the question – - indeed, the Court in <u>Crandon</u> noted that purpose of the statute, yet held the statute not applicable after applying the rule of lenity.  Without applying that rule, and without mentioning the true purpose of the statute, this court's conclusion in <u>POGO II</u> that the "government's textual reading is more persuasive as a matter of statutory construction" is incorrect.  525 F.Supp. 2d at 172.  Putting aside the fact that "more persuasive" does not mean that the statute is not ambiguous, this court's interpretation of the statute "smack[s] of the meat axe." <u>Valdes</u>, 475 F.3d at 1329.  And, this court's statement that "the stated purpose of § 209(a) is better served by finding that lump-sum payments fall within it," 525 F.Supp.2d at 172-73, "is a textbook example of begging the question." <u>Santos</u>, 128 S.Ct. 2026.

This court also claimed in <u>POGO II</u> that the defendant's position suffered from "another defect: he points to no authority to support his proposition.  Neither before nor

13

after <u>Crandon</u> has any court held that § 209(a) does not apply
to lump-sum payments." 525 F.Supp. 2d at 173. Putting aside
the fact that this statement is incorrect, as discussed
below, the converse  was also true, according to this
court - - there was no case specifically holding that lump-
sum payments <u>did</u> come within § 209's prohibitions. Again,
the rule of lenity, not applied by this court, should change
the result. Moreover, in any event, the court's assertion
was incorrect.

In <u>Alfisi</u>, the defendant was convicted of bribery under
§ 201(b)(1)(A), and paying a gratuity under § 201(c)(1)(A).
The defendant argued that the district court should have
instructed the jury that a misdemeanor § 209 offense was a
lesser-included offense of bribery. 308 F.3d at 153. The
court rejected the argument, holding:

> As we read Section 209, the payments in
> question <u>must bear some or most of the</u>
> <u>objective indicia of salaries</u>, e.g., being so
> recorded in business records and so treated
> for tax purposes by the payor. When
> accompanied by the requisite corrupt intent,
> such payments might violate Section 201.
> However, <u>where the payments bear none of the</u>
> <u>indicia of salary but are made with the</u>
> <u>requisite corrupt intent, they violate Section</u>
> <u>201 but not Section 209</u>. A violation of
> Section 201 is not, therefore, inevitably a
> violation of Section 209. In the present case,
> moreover, there is no evidence that Alfisi or
> Post & Taback ever treated the payments to
> Cashin as salary. All of the evidence
> indicates that they were in cash and off-book.
> Even if Section 209 can be a lesser-included

14

> offense of Section 201 violations in some
> cases, therefore, the jury here should not
> have been instructed on Section 209.

Id. (Emphasis added).  This court's failure in POGO II to
mention Alfisi is another glaring omission in its analysis.
Cf., United States v. Moore, 765 F.Supp. 1251, 1253 (E.D. Va
1991)(defendant admitted in plea agreement that he received
dividends from a private company "to supplement [his] salary
for his work at" government agency)

Furthermore, this court's opinion in POGO II ignores the
different, and carefully selected, terms used in the statutory
scheme involving "Bribery, Grafts, and Conflicts of Interest"
in Chapter 11 of Title 18 of the U.S.Code. Section 201 refers
to "anything of value;" § 203 refers to "any compensation";
§ 210 refers to "any money or thing of value"; § 211 refers to
"any money or thing of value"; § 212 refers to "any loan or
gratuity"; § 213 refers to "a loan or gratuity"; § 214 refers
to "any fee, commission, loans, or thing of value"; § 215
refers "to any fee, commission, gift, or other consideration";
and, § 226 refers to "anything of value".

Thus, the use of the terms "salary, or any contribution
to or supplementation of salary" obviously have a very
specific meaning.  Yet this court's decision in POGO II
substitutes the words "any money or thing of value" for them.
Indeed, this court's reading of the statute in POGO II

15

essentially deletes the words "any salary, or any contribution
to or supplementation of salary," from § 209, and thus "reads
them out of the statute." <u>Begay v. United States</u>, 128
S.Ct. 1581, 1588 (2008).  Courts "cannot accept that power in
a criminal case, where the law must be written by Congress."
<u>Santos</u>, 128 S.Ct. at 2030.

Congress obviously knew how to use very specific terms in
its prohibitions, including the very broad term of "anything
of value," yet it did not do so in § 209.  It is the only
provision where the terms "salary, or any contribution to or
supplementation of salary" appear.  That is not surprising, as
the statute was aimed at a specific problem - - government
employees receiving nominal salaries from the government at
the same time that private organizations were also paying them
salaries.  Yet this court's interpretation in <u>POGO II</u> of this
provision deprives it of any meaning, and "runs afoul of the
usual rule that 'when the legislature uses certain language in
one part of the statute and different language in another, the
court assumes different meanings were intended.'" <u>Sosa v.
Alvarez-Machain</u>, 542 U.S. 692, 711 n.9 (2004)(quoting 2A N.
Singer, Statutes and Statutory Construction § 46:06, p. 194
(6th ed. 2000)).

Finally, this court noted that three other courts have
apparently "assumed that a lump-sum payment could violate

16

§ 209(a)." Id. at 173.  In none of these cases, however, was the issue raised by the defendant.

In <u>United States v. Alfonzo-Reyes</u>, 384 F.Supp. 2d 523, 534 (D. P.R. 2005), the defendant claimed that the government "failed to connect the improper payments . . . to a <u>specific official act</u>." (Emphasis in original).  Thus, while the court characterized § 209, without citation to any case, as "essentially" prohibiting the receipt of "any salary or anything of monetary value from a private source as compensation for . . . services to the government," the issue of whether the payment must be in the form of a salary was not argued by the defendant or decided by the court.

Likewise in <u>United States v. Oberhardt</u>, 887 F.2d 790, 791 (7th Cir. 1989), the defendant was convicted of a § 209 charge for paying a government employee for a list of contractors. The defendant argued that "his conviction cannot stand" because the government employee "was not performing a service as a government employee when he sold" the list.  Id. at 793. The court saw no need to "parse the wording of § 209 or delve into its legislative history," because the defendant had testified that he thought the employee "was acting within the scope of his duties in providing a copy of the list."  Id.

Similarly, in <u>United States v. Muntain</u>, 610 F.2d 964, 969-70 (D.C. Cir. 1979), the court decided that a payment "was

17

for services having nothing to do with HUD business or with
any responsibilities Muntain may have had to the Government as
an employee."  The defendant again did not argue that the
payments had to have the indicia of salary to come within
§ 209.  As this court correctly noted in POGO II, 525 F.Supp.
2d at 173, the court's statement in Muntain that payment of a
spouse's air fare might "satisfy the first requirement of
§ 209" was dicta.  610 F.2d at 969.

        Thus, in none of the cases cited by this court in POGO II
did a party raise, or the court decide, the issue of lump-sum
payments coming within § 209.  Courts "do not ordinarily give
weight to assumptions made in prior cases about matters that
were not in dispute."  Rothgery v. Gillespie County, No. 07-
440, 2008 WL 2484864 at *23 n.1 (Sup. Ct. June 23, 2008)
(Thomas, J., dissenting).

        POGO III did not contain further discussion of whether
lump-sum payments come within the purview of § 209.  Nor does
POGO IV, although the court did emphasize the importance of a
"literal reading of the statute."  531 F.Supp.2d at 63
(quoting Crandon, 494 U.S. at 168).  The court did return to
the issue in POGO V, involving post-trial motions, and noted
that the defendant's argument had already "been rejected by
this Court."  543 F.Supp.2d at 61 (footnote omitted).  The
court claimed, in conclusory fashion, that a contrary holding

18

would "be ruinous to the statute's established prophylactic purpose," that "[n]o Court has so held," and "that there is ample authority supporting the opposite conclusion." Id.  As discussed above, however, none of these three premises are correct.

For all the above reasons, this court's decision in POGO II was incorrect, and a judgment of acquittal should be granted on the § 209 counts.  Otherwise, as the court in Alfisi recognized, the gratuity counts are simply lesser included offenses of the § 209 counts.

**C.  No violation occurred because the payments were not made to compensate Mr. Smitherman for services rendered to the government.**

A violation of § 209 occurs only if there is a direct link between the payment to the employee and the official services rendered by the employee.  See POGO I, 454 F.3d at 309-10 ("statute requires 'an intentional, direct link between the outside compensation and the employee's government service'").  Here, Mr. Wiggins did not pay Mr. Smitherman for performing services on behalf of the DCPS.  Cf. Oberhardt, 887 F.2d at 793-94 (sufficient evidence to support finding that employee was performing services as an employee where defendant who paid employee testified that he thought employee was not doing anything wrong).  Muntain, 610 F.2d at 970 (no violation where payment "bore no relation to governmental

services"). <u>United States v. Moore</u>, 765 F.Supp. 1251 (E.D. Va. 1991) ("prohibited payments must be made with compensatory intent, i.e. 'as compensation for' services as a government employee") (citing <u>United States v. Boeing Co., Inc.</u>, 845 F.2d 476, 480-81 (4th Cir. 1988)).

**D.   No violation occurred because Mr. Smitherman did not act willfully**

Mr. Smitherman has been charged with the felony provision of the statute, § 216(a)(2), which requires that he must have acted willfully.  That state of mind distinguishes the felony provision of the statute from the misdemeanor provision, § 216(a)(1).  In this context, the term willful means that Mr. Smitherman must have had "knowledge of the" prohibition of salary supplementation and a "purpose to disobey the law." <u>United States v. Tatoyan</u>, 474 F.3d 1174, 1179 (9th Cir. 2007)(<u>quoting</u> <u>Ratzlaf v. United States</u>, 510 U.S. 135, 141 (1994)).

In other words, the government must prove that Mr. Smitherman "knew of the duty" not to accept the payments, and "that he voluntarily and intentionally violated that duty." <u>United States v. Mathes</u>, 151 F.3d 251, 254-55 (5th Cir. 1998) (quoting <u>Cheek v. United States</u>, 498 U.S. 192, 201 (1991)). <u>See</u> <u>also</u>, <u>United States v. Lachman</u>, 521 F.3d 12(1st Cir. 2008) (jury instruction stated that willfully meant that defendants "must have intended to violate law," meaning that "they were

aware that their conduct was unlawful").

Even if the court rejects Mr. Smitherman's argument relating to the meaning of the supplementation of salary, the government has failed to prove that he acted willfully.

### CONCLUSION

For the reasons set forth above, and for all the other reasons set forth in his oral Rule 29 motion, Mr. Smitherman respectfully requests that this motion be granted and that the Court enter a judgment of acquittal as to each of the six counts of the indictment.

Respectfully submitted,

_____
A.J. KRAMER
FEDERAL PUBLIC DEFENDER


_____
MARY MANNING PETRAS
ASSISTANT FEDERAL PUBLIC DEFENDER
625 Indiana Avenue, N.W.
Suite 550
Washington, D.C.  20004
(202) 208-7500